**Edward J. WILLEY d/b/a Meridian Exploration Company, Appellant,**

v.

**Adolph VINCIK et ux., Appellees.**

**No. 553.**

Court of Civil Appeals of Texas,
Corpus Christi.

Sept. 24, 1970.

Stone, Luther & Dyer, Curtis B. Dyer, Corpus Christi, for appellant.

Vance, Vance & McNeil, W. T. McNeil, Edna, for appellees.

OPINION

SHARPE, Justice.

This appeal is from a judgment in the amount of $7,815.00 rendered after jury trial in favor of appellees Adolph Vincik and wife, plaintiffs below, against Robert L. Begeman and E. J. Willey, d/b/a Meridian Exploration Company, defendants below. Only Willey has appealed.

Appellees sued Willey and Begeman for damages to portions of their land based upon a contract dated March 10, 1967, originally between appellees and Begeman, consisting of an oil, gas and mineral lease

and a letter agreement in connection therewith covering 288.5 acres of land situated in Jackson County, Texas. The lease was transferred and assigned by Begeman (with reservation of an undivided interest) to E. J. Willey, d/b/a Meridian Exploration Company prior to the drilling operations involved in this case.

The letter agreement provided in part as follows:

"3. It is further agreed, in connection with the damage clause contained in the above mentioned lease, that I will pay damages on each drilling site of not less than $500.00 per acre for each acre of land actually damaged, and such damages shall be paid in addition to the agreement contained in the lease that the land shall be leveled and left as nearly as possible in its original condition."

The two special issues submitted to the jury and the answers thereto are as follows:

### "SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that the Plaintiff's land was actually damaged by the drilling operations of the Defendant?

You are instructed in answering this Special Issue that the term 'actually damaged' as that term is used herein shall mean that such operations rendered the land unuseable for the purpose it was being used at the time the various acts took place.

Answer 'Yes' or 'No'.

WE, THE JURY, ANSWER   YES

If you have answered the foregoing Special Issue No. 1 'Yes', and only in such event, then answer the following Special Issue No. 2; otherwise, do not answer the same:

### SPECIAL ISSUE NO. 2

What number of acres, or fractions of acres, if any, do you find from a preponderance of the evidence was actually damaged, as that term has been hereinabove defined, to Plaintiff's land by the Defendant's drilling operations?

Answer by stating a number and/or a fraction of a number, if any.

WE, THE JURY, ANSWER 15.63 acres"

The amount of the judgment was arrived at by multiplying 15.63 (acres damaged) by $500.00, the minimum amount provided in the contract for each acre actually damaged, resulting in the sum of $7,815.00.

Appellant asserts eighteen points of error which when summarized contend that the evidence was legally and factually insufficient to support the jury answers to special issues numbers one and two; that the trial court erred in overruling appellant's motion for instructed verdict, objections to the court's charge; motion for judgment n. o. v., and his motion for new trial. Appellant's primary contention is that the drilling operations conducted on appellees' land by appellant pursuant to the lease agreement as amended caused no damage, as that term is defined by the court, and that there was no question for the jury to pass upon.

We have concluded that the evidence was legally and factually sufficient to support the jury verdict and that the trial court did not err in the respects complained of by appellant.

On the trial of the case four witnesses testified and a number of exhibits, including many photographs, were received in evidence. Witnesses for appellees were Adolph Vincik and Willie Novak. Witnesses for appellant were William R. Thomas, a petroleum engineer employed by appellant, and Paul Burrhus, a tool pusher employed by Howell Drilling Company, which concern had drilled the wells on appellees' land under contract with appellant. The testimony of the last named two witnesses, was, in substance, that although the clean-up operations on appellees' land had

been delayed because of adverse conditions, especially rain, that the land had been restored as far as possible to its original condition. Some photographs, apparently taken on June 30, 1969, were offered by appellant and used in connection with the testimony of Mr. Thomas.

It was undisputed that six wells were drilled on appellees' land in search of oil or gas during the period of May 1967 to March 1968; that mud pits were dug on the land in connection with each drilling operation; and that drilling mud was pumped or drained into each of the mud pits. Appellee, Adolph Vincik, and the witness, Willie Novak, testified at length concerning the condition of appellees' land caused by appellant's operations. Appellee, Adolph Vincik, testified in part as follows: That when the mud pits were filled, drilling mud was spread over the drill site leaving large chunks of dirt, concrete and baroid; that parts of the soil in the drilling areas became packed, while other parts of the drilling areas were left in a soft condition; that some of the land was left in a rough and soft condition making it impossible to farm the land; that none of the land affected by appellant's operation could be farmed during the year 1968; that it was not economically feasible to continue farming the land affected by appellant's drilling operations, and that if it were practical to do so he would exclude such land from the area being farmed; that in the area affected by appellant's drilling operations appellees' 1969 crop yield was reduced to fifty per cent or less as compared to the crop yield in the unaffected areas farmed by appellees. The witness, Willie Novak, testified that it was impossible to prepare and plant the land affected by appellant's drilling operations during the 1968 crop year. Appellees introduced in evidence sixteen photographs showing the condition of the land in May, 1968. Adolph Vincik, using such photographs, pointed out to the jury the areas included in his measurement of the land alleged to be damaged by appellant's drilling operations. With reference to special issue number 2, which inquired as to the amount of land, if any, that was actually damaged by appellant's drilling operations, appellee, Adolph Vincik, and the witness, Willie Novak, testified concerning the condition of the damaged areas and as to how such areas were measured. Diagrams or plats made by appellees and showing the measured areas affected by appellant's drilling operations were introduced into evidence.

The jury was entitled to accept and believe appellees' evidence and to reject that of appellant. There was credible testimony to show that appellant's drilling operations rendered 15.63 acres of appellees' land useless for its intended purpose of farming for the entire year of 1968 and also adversely affected it thereafter. The evidence was legally and factually sufficient to support the findings of the jury. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965); In re King's Estate, 150 Tex. 662, 244 S.W. 2d 660 (1952).

■ In this case it is established that Begeman, as a part of the consideration for the oil, gas and mineral lease agreed to pay damages on each drilling site of not less than $500.00 per acre for each acre of land actually damaged in addition to the agreements contained in the lease that the land should be leveled and left as nearly as possible in its original condition. Appellant, assignee of Begeman, has not questioned the validity or effectiveness of that contract provision. Here, the measure of damages was fixed by the contract. Appellees did not attempt to prove more than the minimum amount of $500.00 per acre for each acre of land actually damaged.

Appellant's points are overruled. The judgment of the trial court is affirmed.